**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WOODROW MOODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 1:26-cv-1839 |
| | ) | |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a/ GEICO, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Woodrow Moody (hereinafter "Moody" or "Plaintiff"), by counsel, for his causes of action against Defendant, Government Employees Insurance Company d/b/a GEICO ("GEICO" or "Defendant"), alleges as follows:

## I. NATURE OF CASE

1. Plaintiff brings this action under the Americans with Disabilities Act of 1990, as amended (the "ADA"), alleging that Defendant discriminated against him because of his disability and terminated his employment.

2. Plaintiff further alleges under the ADA that Defendant failed to provide a reasonable accommodation and failed to engage in the interactive process after he requested an accommodation for limitations caused by cataracts associated with his cancer treatment.

3. Plaintiff further alleges under the ADA that Defendant retaliated against him for requesting a reasonable accommodation and opposing conduct he reasonably believed violated his federally protected rights.

4. Plaintiff brings additional claims under the Family and Medical Leave Act (the

"FMLA"), alleging that Defendant interfered with the exercise of his statutory rights by using FMLA-protected absences as a negative factor in evaluating his performance and terminating his employment.

5. Plaintiff further alleges under the FMLA that Defendant retaliated against him for requesting and using protected leave.

## II. PARTIES

6. Woodrow Moody is a resident of Carmel, Indiana, located in Hamilton County, and during all times relevant to this action worked for Defendant as a Field Supervisor in Indiana within the Southern District of Indiana, Indianapolis Division.

7. Government Employees Insurance Company does business as GEICO, employed Plaintiff, maintains substantial business operations in Indiana, and conducts business within the Southern District of Indiana, Indianapolis Division.

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 12117 and 2000e-5(f)(3), and 29 U.S.C. § 2617(a)(2).

9. Plaintiff is an "employee" and a "qualified individual" within the meaning of the ADA, 42 U.S.C. §§ 12111(4) and 12111(8), and an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2).

10. Defendant is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FMLA, 29 U.S.C. § 2611(4).

11. At all relevant times, Plaintiff had worked for Defendant for at least twelve months, had worked at least 1,250 hours during the preceding twelve months, and worked at or reported to a worksite at which Defendant employed at least fifty employees within seventy-five miles.

12. Plaintiff timely filed Charge of Discrimination No. 470-2026-02844 with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation.

13. The EEOC issued Plaintiff a Notice of Right to Sue on June 5, 2026, and Plaintiff filed this action within ninety days of his receipt of that notice.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Indiana within the Southern District of Indiana, Indianapolis Division.

## IV. FACTUAL AND LEGAL ALLEGATIONS

15. Plaintiff began working for Defendant on or about August 20, 1998.

16. At the time of his termination, Plaintiff worked as a Field Supervisor in Indiana. In that role, he supervised field associates and was responsible for customer service, productivity, quality, and other operational performance measures.

17. Plaintiff performed his job satisfactorily and consistently met or exceeded Defendant's legitimate expectations, including achieving strong customer-satisfaction scores and productivity ratings of four or five on a five-point scale.

18. Plaintiff has metastatic melanoma with brain involvement and cataracts. These conditions substantially limit one or more major life activities, including seeing, and constitute disabilities within the meaning of the ADA.

19. Defendant knew of Plaintiff's medical conditions and related limitations.

20. Because of his serious health condition, Plaintiff had been approved for and used intermittent FMLA leave beginning in or about 2021.

21. Plaintiff remained able to perform the essential functions of his Field Supervisor

position, with or without reasonable accommodation.

22. In January 2024, Defendant informed Plaintiff that he would be moved from his Field Supervisor role to a virtual supervisor role, although Plaintiff expressed his preference to remain in the field.

23. Plaintiff raised concerns that the proposed reassignment was not based on performance. After Plaintiff escalated those concerns, Defendant reassigned another supervisor instead.

24. Throughout 2024 and 2025, Defendant transferred multiple associates to Plaintiff's team, including employees with performance problems, while assigning higher-performing associates and associates located closer geographically to other supervisors.

25. Plaintiff raised concerns about the resulting performance burdens, team ratios, and geographic inconsistencies, but Defendant did not meaningfully address them.

26. In November 2024, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP").

27. The PIP expressly referenced Plaintiff's FMLA absences as having negatively affected his performance.

28. Plaintiff escalated the PIP's reliance on his protected leave to Human Resources, but Defendant took no corrective action.

29. During 2024 and 2025, Defendant assigned leadership projects to other supervisors while assigning Plaintiff delegated managerial work that created friction with peers and adjusters.

30. Defendant later made leadership contributions part of its formal evaluation criteria, even though Defendant had not coached Plaintiff or told him that his leadership performance was deficient.

31. On January 13, 2026, Plaintiff requested a reasonable accommodation under the ADA to avoid nighttime driving because cataracts caused by steroid treatment impaired his vision at night.

32. Plaintiff's physician provided medical documentation supporting the requested accommodation.

33. The requested accommodation was reasonable and would have enabled Plaintiff to continue performing the essential functions of his position without imposing an undue hardship on Defendant.

34. Lincoln Financial Group, Defendant's leave and accommodation administrator, acknowledged receiving Plaintiff's accommodation request and forwarded it to Defendant on or about February 8, 2026.

35. Defendant did not engage Plaintiff in a good-faith interactive process, request additional information from him, propose an alternative accommodation, or issue a determination on his request before terminating his employment.

36. Also on January 13, 2026, Plaintiff submitted his annual FMLA recertification, supported by a Certification of Health Care Provider documenting metastatic melanoma, ongoing cancer treatment, and associated side effects.

37. Lincoln Financial acknowledged receiving the recertification but experienced administrative delays in processing it.

38. Defendant knew that Plaintiff had submitted the recertification and that his need for intermittent leave was connected to his ongoing cancer treatment.

39. On February 13, 2026, which was approximately one month after Plaintiff requested an ADA accommodation and submitted his FMLA recertification, and only five days

after Defendant received the accommodation request, Defendant terminated Plaintiff's employment.

40. During the call notifying Plaintiff of his termination, Defendant stated that Plaintiff had performed below minimum standards during the second half of 2025 and had failed the "leadership" component, which constituted twenty percent of his evaluation.

41. Before the termination decision, Defendant had never communicated or coached Plaintiff concerning any purported deficiency in the leadership component of his performance.

42. Defendant's termination letter gave a materially different explanation, stating that Plaintiff had performed below minimum standards for the entire 2025 performance year.

43. Plaintiff had already received confirmation that he would receive a bonus for his 2025 performance.

44. Plaintiff's objective performance measures, which included productivity, partial-loss reinspection results, and customer-satisfaction scores, were strong and did not support Defendant's stated reasons for termination.

45. After Plaintiff's termination, his FMLA leave was approved retroactively, confirming that the absences Defendant had referenced in its performance assessments were protected under the FMLA.

46. Upon information and belief, Plaintiff was the only Field Supervisor terminated company-wide at that time.

47. Defendant's explanations for Plaintiff's termination were false, inconsistent, and pretextual.

48. The close timing, Defendant's express reliance on FMLA-protected absences, its failure to address Plaintiff's accommodation request, its shifting explanations, and Plaintiff's

strong objective performance support an inference that Defendant terminated Plaintiff because of his disability and protected activity and in retaliation for his exercise of FMLA rights.

49. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, anxiety, humiliation, and additional stress during his cancer treatment.

50. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

51. Any reasons Defendant has offered or may offer for its actions are false and pretextual.

## V. CAUSES OF ACTION

### COUNT I: ADA – DISABILITY DISCRIMINATION

52. Plaintiff incorporates paragraphs 1-51.

53. Plaintiff is disabled within the meaning of the ADA and was a qualified individual who could perform the essential functions of his position, with or without reasonable accommodation.

54. Defendant knew of Plaintiff's disability and subjected him to adverse employment action, including termination, because of his disability.

55. Defendant's stated reasons for terminating Plaintiff were false and pretextual.

56. Defendant is liable for disability discrimination under the ADA.

### COUNT II: ADA – FAILURE TO ACCOMMODATE

57. Plaintiff incorporates paragraphs 1-56.

58. Plaintiff requested a reasonable accommodation to avoid nighttime driving because of disability-related limitations caused by cataracts.

59. The requested accommodation was reasonable and would have allowed Plaintiff to perform the essential functions of his position.

60. Defendant failed to engage in a good-faith interactive process and failed to provide Plaintiff a reasonable accommodation before terminating him.

61. Defendant is liable for failing to accommodate Plaintiff's disability in violation of the ADA.

## COUNT III: ADA – RETALIATION

62. Plaintiff incorporates paragraphs 1-61.

63. Plaintiff engaged in activity protected by the ADA by requesting a reasonable accommodation and by raising concerns regarding Defendant's treatment of his disability-related limitations.

64. Defendant knew of Plaintiff's protected activity and, shortly thereafter, terminated his employment.

65. Defendant's actions would dissuade a reasonable employee from requesting an accommodation or otherwise asserting rights protected by the ADA.

66. Defendant's stated reasons for its actions were pretextual, and Defendant acted with retaliatory intent.

## COUNT IV: FMLA – INTERFERENCE

67. Plaintiff incorporates paragraphs 1-66.

68. Plaintiff was entitled to rights and protections under the FMLA and provided Defendant sufficient notice of his need for intermittent leave for a qualifying serious health condition.

69. Plaintiff requested and used FMLA-protected leave, and his 2026 recertification

was later approved retroactively.

70. Defendant interfered with, restrained, and denied Plaintiff's exercise of FMLA rights by treating protected absences as a negative factor in its PIP and performance assessments and by relying on those absences in terminating his employment.

71. Defendant's interference caused Plaintiff prejudice, including lost compensation and benefits.

**COUNT V: FMLA – RETALIATION**

72. Plaintiff incorporates paragraphs 1-71.

73. Plaintiff engaged in activity protected by the FMLA by requesting, using, and seeking recertification of intermittent FMLA leave.

74. Defendant knew of Plaintiff's protected activity and subjected him to adverse employment actions, including a PIP that expressly referenced his FMLA absences and termination.

75. Defendant retaliated against Plaintiff because he exercised rights protected by the FMLA.

76. Defendant's stated reasons for its actions were false and pretextual.

**VI. REQUESTED RELIEF**

WHEREFORE, Plaintiff, Woodrow Moody, respectfully requests that this Court:

1. Enter judgment in Plaintiff's favor on all counts;

2. Declare that Defendant violated Plaintiff's rights under the ADA and FMLA;

3. Award Plaintiff back pay and lost benefits in an amount to be determined at trial;

4. Award Plaintiff front pay in lieu of reinstatement, or reinstatement, as the Court deems appropriate;

5. Award Plaintiff compensatory damages for emotional distress, mental anguish, humiliation, and other non-economic harms permitted under the ADA;

6. Award Plaintiff liquidated damages as permitted under the FMLA;

7. Award Plaintiff punitive damages as permitted under the ADA for Defendant's malicious or reckless disregard of Plaintiff's federally protected rights;

8. Award Plaintiff his reasonable attorneys' fees and costs under the ADA, 42 U.S.C. § 12205 and the FMLA, 29 U.S.C. § 2617(a)(3);

9. Award pre-judgment and post-judgment interest as allowed by law; and

10. Grant all other legal or equitable relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

John H. Haskin (7576-49)
Matthew A. Smith (38571-29)
JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
Telephone (317) 955-9500
Facsimile (317) 955-2570
Email: jhaskin@jhaskinlaw.com
Email: msmith@jhaskinlaw.com
*Attorneys for Plaintiff*